UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
STEVEN PALLADINO AND
LORI PALLADINO,                                             Chapter 7
        DEBTORS.                                      Case No. 14-11482-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matters before the Court are the "Chapter 7 Trustee's Motion for Summary Judgment on Objection to Claim of Homestead Exemption" (the "Trustee's Motion") filed by Mark G. DeGiacomo (the "Trustee"), Chapter 7 trustee of the substantively consolidated bankruptcy estates of Steven and Lori Palladino (the "Palladinos") and Viking Financial Group, Inc. ("Viking, collectively with the Palladinos, the "Debtors"), the "Creditor U.S. Securities and Exchange Commission's Motion for Summary Judgment and Notice of Adoption of the Chapter 7 Trustee's Motion for Summary Judgment" (the "SEC's Motion") filed by the United States Securities and Exchange Commission (the "SEC"), and the oppositions thereto filed by the Palladinos. The Trustee and the SEC object to the Palladinos' claimed exemption under the Massachusetts Homestead Statute[1] on the basis that the real estate in question is not their principal residence and they have never intended to occupy it as such. For the reasons set forth below, I will grant in part and deny in part both motions for summary judgment.

---

[1] Mass. Gen. Laws ch. 188, § 1 *et seq.*

1

## II. BACKGROUND

By and large, the facts are undisputed. Pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts, adopted and made applicable to proceedings in the Bankruptcy Court by Massachusetts Local Bankruptcy Rule ("MLBR") 7056-1, motions for summary judgment must include "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions, and other documentation."[2] In compliance with the rule, a "Concise Statement of Undisputed Material Facts" (the "Undisputed Facts") with citations to attached exhibits accompanied the Trustee's Motion.[3] Once this was done, Local Rule 56.1 required the Palladinos to expressly controvert statements in the Undisputed Facts, with supporting references to the record, else they would be deemed admitted for purposes of summary judgment.[4] Moreover, an opposition to summary judgment generally must contain a statement of material facts to which the opposing party contends that there exists a genuine issue to be tried.[5] The Palladinos' submissions contain neither, but instead simply state that

> [t]he majority of the facts in the [Trustee's/SEC's] memorandum of law to support his motion are undisputed, however the Debtors desire that the Court consider the facts that are not included in the memorandum and ought to be considered by this Court.[6]

---

[2] LR, D. Mass 56.1, adopted and made applicable to proceedings in the Bankruptcy Court by MLBR 7056-1.

[3] *See* Undisputed Facts, Docket No. 210-2.

[4] LR, D. Mass 56.1, adopted and made applicable to proceedings in the Bankruptcy Court by MLBR 7056-1.

[5] *Id.*

[6] Memorandum in Support of Opposition to Trustee's Motion for Summary Judgment (the "Opposition to Trustee"), Docket No. 216 at 2; Memorandum in Support of Opposition to [SEC's] Motion for Summary Judgment (the "Opposition to SEC"), Docket No. 217 at 2.

Accordingly, the Undisputed Facts are deemed admitted to the extent that they are adequately supported by the exhibits attached thereto.

Unfortunately, the Undisputed Facts omit certain background information necessary to place this dispute in context which I may extract from the Court's records.[7] From the outset, I note that the Palladinos were the principals of Viking. Their Statement of Financial Affairs (the "SOFA") reflects that Steven Palladino and Viking were subject to a criminal proceeding brought by the Commonwealth of Massachusetts and a separate proceeding brought by the SEC.[8] As a result of these proceedings, Steven Palladino was convicted and incarcerated prepetition.[9] Steven Palladino's adult son, Gregory Palladino is also incarcerated, but it is unclear from the limited record before me whether it is related to the proceedings against Viking and Steven Palladino.[10]

On April 1, 2014, the Palladinos filed a skeletal Chapter 7 petition.[11] The Trustee was appointed the following day.[12] The Palladinos filed their schedules on April 16, 2014. On "Schedule A – Real Property" ("Schedule A"), the Palladinos listed the following three properties:[13]

---

[7] *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir.1999) (a court may take judicial notice of its own records).

[8] SOFA, Docket No. 14 at ¶ 4.

[9] *Id.*; Undisputed Facts, Docket No. 210-2 at ¶ 23.

[10] Undisputed Facts, Docket No. 210-2 at ¶ 15.

[11] *Id.* at ¶ 1.

[12] *Id.* at ¶ 2.

[13] Schedule A, Docket No. 12. I note in the Palladinos' Schedules, Kittredge Street incorrectly listed as "Kittridge Street."

| Description and Location of Property | Current Value of Debtor's Interest in Property | Amount of Secured Claim |
|---|---|---|
| 29 Kittredge Street Roslindale, MA (the "Kittredge Street Property") | $448,000.00 | $212,913.00 |
| Vacant Lot 92 Mount Vernon Street West Roxbury, MA | $172,000.00 | $92,016.00 |
| 40 Lyall Street [West Roxbury, MA][14] (the "Lyall Street Property") | $400,000.00 | $212,913.00 |

On "Schedule C – Property Claimed as Exempt" ("Schedule C"), claimed the following exemptions with respect to real property:[15]

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| 29 Kittredge Street Roslindale, MA | Mass. Gen. Laws c. 188, § 1 | $235,087.00 | $448,000.00 |
| 40 Lyall Street | Mass. Gen. Laws c. 188, § 1 | $187,087.00 | $400,000.00 |

The record reflects that Steven Palladino acquired the Kittredge Street Property by deed recorded at the Suffolk County Registry of Deeds on November 20, 2009.[16] Ten days later, on November 30, 2009, he recorded a Declaration of Homestead with respect to the Kittredge Street Property.[17] There is no dispute that the Palladinos did not occupy the Kittredge Street Property at the time the Declaration of Homestead was executed or recorded.[18] Instead, the Palladinos continued to reside at the Lyall Street Property with their minor children as they had since

---

[14] Schedule A did not indicate where 40 Lyall Street is located, but it is undisputed that this property is located in West Roxbury.

[15] Schedule C, Docket No. 12.

[16] Undisputed Facts, Docket No. 210-2 at ¶ 7; see Ex. B, Docket No. 210-5.

[17] Undisputed Facts, Docket No. 210-2 at ¶ 8; see Ex. C, Docket No. 210-6.

[18] Undisputed Facts, Docket No. 210-2 at ¶ 11.

4

September, 2005.[19] In fact, Lori Palladino continued to reside at the Lyall Street Property on the petition date, while Steven Palladino was by this point incarcerated.[20] On the petition date, record title to the Lyall Street Property was held by the Palladinos and their adult son, Gregory Palladino.[21]

According to a professional market analysis obtained by the Trustee, the Kittredge Street Property has a fair market value of between $493,000.00 and $524,000.00.[22] It is currently encumbered by a mortgage held by Bank of America securing an obligation in the amount of $221,634.92, and an attachment in the amount of $4,255,000.00.[23] Notwithstanding the attachment, the Trustee has reached an agreement with the attachment holders by which the estate will receive fifty percent of the proceeds of any sale of the Kittredge Street Property, net administrative expenses.[24]

On April 18, 2014, the SEC obtained a final judgment against Steven Palladino for violations of applicable securities laws.[25] Steven Palladino was found liable for disgorgement, with prejudgment interest, in the amount of $9,824,109.00.[26]

On April 29, 2014, the Trustee conducted the meeting of creditors held pursuant to 11 U.S.C. § 341(a) (the "Meeting of Creditors"), at which Lori Palladino appeared in person and

---

[19] *Id.* at ¶¶ 12, 22, 24.

[20] *Id.* at ¶¶ 21, 23.

[21] *Id.* at ¶ 18.

[22] Undisputed Facts, Docket No. 210-2 at ¶ 35.

[23] *Id.* at ¶ 36.

[24] *Id.* at ¶ 37.

[25] *Id.* at ¶ 29.

[26] *Id.*

Steven Palladino appeared by telephone.[27] Steven Palladino testified that the Kittredge Street Property "was purchased with the idea that my elder son was going to move there and then buy the property . . . from me."[28] Gregory Palladino, the "elder son" referenced by Steven Palladino, was 24 years old at the time Steven Palladino purchased the Kittredge Street Property.[29] He resided on the first floor of the Kittredge Street Property with a roommate from the date it was purchased until his incarceration.[30] The second floor was, at that time of the Meeting of Creditors, rented to a third party.[31] Steven Palladino further described the Lyall Street Property as the family home.[32] After explaining a convoluted series of transfers that ultimately placed record title to the Lyall Street Property in Gregory Palladino and the Palladinos, the Palladinos conceded that notwithstanding the state of title, Gregory Palladino did not really have an ownership interest in the Lyall Street Property.[33]

On May 3, 2014, the Palladinos filed an amended Schedule C ("Amended Schedule C") in which they deleted the reference to the Lyall Street Property.[34] Three days later, on May 6, 2014, Viking filed a voluntary Chapter 7 petition of its own, and the Trustee was subsequently

---

[27] Undisputed Facts, Docket No. 210-2 at ¶ 3; *see* Ex. A, Docket No. 210-4.

[28] Undisputed Facts, Docket No. 210-2 at ¶ 9; Ex. A, Docket No. 210-4 at 17:17-21; 18:5-11.

[29] Undisputed Facts, Docket No. 210-2 at ¶ 10.

[30] *Id.* at ¶ 15.

[31] *Id.* at ¶ 28.

[32] *Id.* at ¶¶ 12, 14.

[33] Ex. A, Docket No. 210-4 at 21-25.

[34] Undisputed Facts, Docket No. 210-2 at ¶ 20; Amended Schedule C, Docket No. 38.

appointed Chapter 7 trustee of Viking's estate.[35] On May 20, 2014, I entered an order substantively consolidating the bankruptcy estates of the Palladinos and Viking.[36]

On May 30, 2014, the SEC filed the "Creditor U.S. Securities and Exchange Commission's Objections to Debtors' Claims of Exemption" (the "SEC Objection"), asserting, *inter alia*, that the Kittredge Street Property is a rental property at which the Palladinos have never resided as their principal residence.[37] The Palladinos filed a response on June 15, 2014, arguing that the Kittredge Street Property was acquired for the benefit of the family and that a member of the Palladino family has always lived in one of the apartments.[38] The Palladinos further stated:

> Prior to filing of the voluntary petition, Lori Palladino had expressed her desire to sell the Lyall Street property and move to Kittredge in place of her son. Her counsel informed her that all of her personal and real property will become part of the 'bankruptcy estate' and cannot be sold without the Court's permission. The Debtors willingly surrendered the Lyall Street property upon the filing of this petition demonstrating that they no longer intended to reside at that residence but to move the entire family to the Kittredge Street home as the mortgage was current at the time of filing.[39]

On August 1, 2014, the Trustee similarly filed the "Chapter 7 Truetee's Objection to the Palladinos' Claim of Homestead Exemption and Limited Objection to the Palladinos' Vehicle Exemption" (the "Trustee's Objection"), asserting, *inter alia*, that the Palladinos' testimony from the Meeting of Creditors indicates that the Lyall Street Property was, and has always been, their

---

[35] Undisputed Facts, Docket No. 210-2 at ¶¶ 4-5.

[36] *Id.* at ¶ 6.

[37] SEC Objection, Docket No. 78 at 3; Concise Statement of Undisputed Material Facts, Docket No. 210-2 at ¶ 31.

[38] Response/Opposition to SEC's Objection to Debtors Exemption of Homestead and Vehicle (the "Debtor's Response"), Docket No. 105 at 1-2.

[39] Debtor's Response, Docket No. 105 at ¶ 2.

7

principal residence.[40] Alternatively, the Trustee argued that any valid homestead exemption must be reduced to $155,675.00 by operation of 11 U.S.C. § 522(q)(1)(B)(i) in light of the judgment against Steven Palladino for securities laws violations.[41] On August 14, 2014, the Palladinos filed an opposition to the Trustee's Objection echoing their earlier response to the SEC's Objection.[42]

On August 20, 2014, Judge Joan N. Feeney conducted a hearing on both the Trustee's Objection and the SEC's Objection. At the conclusion of oral arguments, she entered an order providing in relevant part:

> The Court deems the objection to the homestead exemption to be a contested matter as it raises factual issues requiring an evidentiary hearing which include: (1) the intent of the Debtors as of the date of the declaration of the homestead; and (2) if the declaration is invalid, their intent as of the petition date. A pre-trial order shall enter.[43]

I entered a pre-trial order on August 25, 2014.

Notably, after the conclusion of the hearing on August 20, 2014, the Trustee filed a motion seeking to sell the Lyall Street Property pursuant to 11 U.S.C. § 363(f).[44] In the Sale Motion, the Trustee explained that on August 18, 2014, Gregory Palladino voluntarily transferred his interest in the Lyall Street Property to the Trustee and released his Declaration of Homestead therein to avoid litigation with the Trustee concerning his ownership interest.[45] I

---

[40] Trustee's Objection, Docket No. 147 at ¶ 13.

[41] *Id.* at 24-28.

[42] Opposition to Trustee's Objection to Debtors Exemption of Homestead and Vehicle, Docket No. 155.

[43] Docket No. 165.

[44] Chapter 7 Trustee's Motion for Authority to Sell Real Estate by Public Sale Free and Clear of All Liens, Claims and Encumbrances (the "Sale Motion"), Docket No. 161.

[45] Sale Motion, Docket No. 161 at ¶¶ 11-12.

granted the Sale Motion on September 17, 2014. There is no dispute that Lori Palladino moved from the Lyall Street Property to the Kittredge Street Property on August 3, 2014.[46]

Notwithstanding Judge Feeney's suggestion that material facts remained in dispute, both the Trustee and the SEC moved for summary judgment on November 3, 2014. The Palladinos filed their oppositions on November 15, 2014. I heard the Trustee's Motion and the SEC's Motion on December 3, 2014, and, at the conclusion of the hearing, I took both under advisement.

### III. POSITIONS OF THE PARTIES

A. The Trustee and the SEC

The Trustee contends that he is entitled to summary judgment because the record clearly demonstrates that the Declaration of Homestead was invalid. In support, he states that it is undisputed that the Palladinos never occupied the Kittredge Street Property, and further posits that they never had the intent to occupy it as a principal residence in the future either. The Trustee relies on the Palladinos' testimony at the Meeting of Creditors wherein they admitted that: (1) at the time of the Declaration of Homestead and at all points prior to the filing of their bankruptcy petition, they were living at the Lyall Street Property; and (2) the Kittredge Street Property was purchased with the intent that Gregory Palladino would reside there and eventually repurchase it from Steven Palladino.

The Trustee further argues that the Palladinos' assertion that they always intended to preserve the Kittredge Street Property for the benefit of their family is flawed for two reasons. First, to the extent that the Palladinos rely on Gregory Palladino's occupancy of the Kittredge Street Property to ground their exemption, the Trustee states that as a non-minor child on the

---

[46] Undisputed Facts, Docket No. 210-2 at ¶¶ 22-25.

date of the Declaration of Homestead, Gregory Palladino is not a member of their "family" for purposes of the Massachusetts Homestead Statute. Second, the Trustee urges me to conclude the Palladinos' claim of two homestead exemptions demonstrates that the Lyall Street Property was truly their principal residence all along. Indeed, the Trustee argues that the Palladinos' intent to change their residence on the petition date is irrelevant because the date of the declaration is the operative date under the Massachusetts Homestead Statute.

The Trustee does not press his objection under 11 U.S.C. § 522(q)(1)(B)(i) at this time. The SEC adopted the position of the Trustee.

B. The Palladinos

The Palladinos oppose summary judgment contending that material issues of fact remain in dispute. They assert Steven Palladino's intent at the date the Kittredge Street Property was purchased is irrelevant because, as the Trustee points out, the declaration date is operative. Moreover, since Gregory Palladino never purchased the Kittredge Street Property from Steven Palladino, the Palladinos conclude the offer to purchase must have been rejected at some point and nakedly suggest that may have happened prior to Steven Palladino's recordation of the Declaration of Homestead. In any event, the Palladinos state that Steven Palladino's intent on the date of the Declaration of Homestead was to protect the equity and preserve the house for the benefit of his family. They assert that Gregory Palladino's history of residing at the Kittredge Street Property prior to his incarceration evidences that intent, and note that their minor children were previously too young to reside there.

The Palladinos argue that at very least, they had the intent to occupy the Kittredge Street Property as their principal residence on the petition date. In support, they not only assert that Lori Palladino had expressed an intent to sell the Lyall Street Property and move into the

Kittredge Street Property to her counsel, but urge me to find that she was realistically left with no other recourse. The Palladinos point out that Lori Palladino was unemployed and without income on the petition date, and therefore could not possibly have expected to cure the mortgage arrearage on the Lyall Street Property. They further note that although Gregory Palladino involuntarily vacated the Kittredge Street Property as a result of his incarceration, his roommate remained for some time, preventing Lori Palladino from immediately moving.

## IV. DISCUSSION

### A. The Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[47] "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[48] Material facts are those having the potential to affect the outcome of the suit under the applicable law.[49]

The party seeking summary judgment "always bears the initial responsibility . . . of identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[50] The nonmoving party must then "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy

---

[47] Fed. R. Civ. P. 56(a) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[48] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[50] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

issue.'"[51] A trialworthy issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[52] The Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[53]

The United States Court of Appeals for the First Circuit has explained this provision to mean that the absence of a material factual dispute is a "condition necessary," but not a "condition sufficient" to summary judgment.[54] The moving party, therefore, must show that it is entitled to judgment as a matter of law.[55]

    B. <u>The Massachusetts Homestead Statute</u>

In 2010, the Massachusetts Legislature enacted a comprehensive revision to the Massachusetts Homestead Statute. It now recognizes two exemptions—a "declared homestead exemption" and an "automatic homestead exemption"—that offer varying degrees of protection depending on whether the owner validly recorded a declaration of homestead.[56] As I have repeatedly observed, "parsing the Massachusetts Homestead Statute now involves a complicated web of defined terms and cross-references."[57]

Mass. Gen. Laws ch. 188, § 3, provides in relevant part:

---

[51] *Triangle Trading Co.*, 200 F.3d at 2 (*quoting Morris v. Gov't Dev't Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[52] *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990) (*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[53] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[54] *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir.1994).

[55] *Id.*

[56] Mass. Gen. Laws ch. 188, § 1.

[57] *In re Newcomb*, 513 B.R. 7, 12 (Bankr. D. Mass. 2014).

> [a]n estate of homestead to the extent of the *declared homestead exemption* in a home may be acquired by 1 or more owners who occupy or intend to occupy the home as a principal residence.[58]

For present purposes, it is enough to say that a "declared homestead exemption" is "an exemption in the amount of $500,000 created by a [properly executed and recorded] written declaration" with respect to a "home."[59] In contrast, Mass. Gen. Laws ch. 188, § 4, provides that:

> [i]n the absence of a valid declaration of homestead recorded under this chapter, an estate of homestead to the extent of the *automatic homestead exemption* shall exist in a home for the benefit of the owner and the owner's family members who occupy or intend to occupy the home as a principal residence.[60]

An "[a]utomatic homestead exemption" is, subject to conditions not germane to this discussion, an exemption in the amount of $125,000.[61]

An "owner," as is relevant here, is "a natural person who is a sole owner . . . ."[62] For purposes of the Massachusetts Homestead Statute, "family" and "family members" are limited to:

> (1) married individuals, both of whom own a home, and any minor child; (2) a married individual who owns a home, a non-titled spouse of the married individual and any minor child; or (3) an unmarried individual who owns a home and any minor child.[63]

---

[58] Mass. Gen. Laws ch. 188, § 3(a) (emphasis added).

[59] Mass. Gen. Laws ch. 188, § 1.

[60] Mass. Gen. Laws ch. 188, § 4 (emphasis added).

[61] Mass. Gen. Laws ch. 188, § 1.

[62] *Id.*

[63] *Id.*

A "minor child" is "a person aged 21 and under, who is the natural or adopted child of an owner or owner's spouse."[64] A "home," in turn, is defined as one of various residential dwelling structures, including a "2 to 4-family dwelling."[65] Finally, a "principal residence," is defined as "the home where an owner, and the owner's family if applicable, resides or intends to reside as the primary dwelling."[66] No person may hold concurrent rights in more than one principal residence.[67]

In the present case, there is no dispute that Steven Palladino is an "owner," or that the Kittredge Street Property contains a "home." Additionally, the Palladinos concede that they never resided at the Kittredge Street Property prepetition. Thus, the relevant inquiry is whether they manifested the requisite intent to occupy the Kittredge Street Property as a principal residence entitling them to either a "declared homestead exemption" or an "automatic homestead exemption." To that end, I have previously held that where a debtor does not occupy the home in question on the date of the declaration, "[a] declaration of interest alone is insufficient" to establish an intent to occupy the home as a principal residence.[68] Instead, "a debtor must demonstrate that the future occupancy is in the near future and is capable of measurement given whatever steps a debtor must take to achieve occupancy."[69]

---

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *In re Roberts*, 280 B.R. 540, 546 (Bankr. D. Mass. 2001).

[69] *Id.*

With this analysis in mind, I recognize that "the granting of summary judgment on a specific intent issue is seldom prudent"[70] as even "[u]ndisputed facts do not always point unerringly to a single, inevitable conclusion."[71] Nevertheless, "state-of-mind issues can be resolved at the summary judgment stage, provided the circumstantial evidence 'is sufficiently potent to establish . . . intent beyond hope of contradiction.'"[72]

### 1. Validity of the "Declared Homestead Exemption"

It is well-established under the Massachusetts Homestead Statute that in order to qualify for a valid "declared homestead exemption," a declarant must have the intent to occupy the home as a principal residence on the date of the declaration of homestead.[73] Based on the record before me, there is no viable claim that Steven Palladino intended to occupy the Kittredge Street Property as a principal residence when he recorded the Declaration of Homestead on November 30, 2009.

At the Meeting of Creditors, Steven Palladino testified that the Kittredge Street Property "was purchased with the idea that [Gregory Palladino] was going to move there and then buy the property . . . from me."[74] The Palladinos assert that this stated intent is not relevant because the Declaration of Homestead was recorded ten days after the acquisition of the property. They further contend that because Gregory Palladino never purchased the Kittredge Street Property, I

---

[70] *Braunstein v. Milhem (In re Milhem)*, No. 02-13423-RS, 2007 WL 2815982, at *1 (Bankr. D. Mass. Sept. 26, 2007).

[71] *In re Varrasso*, 37 F.3d at 764.

[72] *Accardi v. Bartel (In re Bartel)*, No. 05-13134-JR, 2008 WL 5396485, at *2 (Bankr. D. Mass. Dec. 23, 2008) (*quoting In re Varrasso*, 37 F.3d at 763).

[73] *See In re Kology*, 499 B.R. 20, 38 (Bankr. D. Mass. 2013); *In re Marrama*, 307 B.R. 332, 337 (Bankr. D. Mass. 2004); *In re Webber*, 278 B.R. 294, 297 (Bankr. D. Mass. 2002).

[74] Undisputed Facts, Docket No. 210-2 at ¶ 9; Ex. A, Docket No. 210-4 at 17:17-21; 18:5-11.

15

should infer that the offer to purchase was rejected "at the time it was made, prior to the recording of the declaration of homestead."[75]

While it is true that Steven Palladino's intent on the date he recorded the Declaration of Homestead is the only dispositive issue, he neither testified to that effect at the Meeting of Creditors nor submitted an affidavit clearly swearing to what his intent was at that time.[76] In the absence of such information, Steven Palladino's stated intent in acquiring the Kittredge Street Property is certainly relevant to the present inquiry as evidence of his intent close in time to the operative date. Moreover, it is consistent with the remainder of the Palladinos' testimony, which is further bolstered by their behavior with respect to the Lyall Street Property over the last ten years. From September, 2005, until recent events, the Palladinos have always lived at the Lyall Street Property with their minor children, which they described at the Meeting of Creditors as their family home.[77] All this evidence points to the fact that the Lyall Street Property was, and has always been, the Palladinos' principal residence.

Nevertheless, the Palladinos advance an alternative contention in their memorandum in opposition to the Trustee's Motion:

> At the time of the recording of the homestead, Mr. Palladino's intention was to preserve the house for his family by renting one unit and keeping and occupying the second unit for his family.[78]

Indeed, they reiterate: "Mr. Palladino's intent was and is to protect and preserve the owner's equity in the home for him/herself and the family, including spouses and minor children."[79]

---

[75] Opposition to Trustee, Docket No. 216 at 4.

[76] While it is clear that the intended transfer of the Kittredge Street Property never occurred, there is nothing in the record, in the form of affidavits or exhibits, to indicate why.

[77] Undisputed Facts, Docket No. 210-2 at ¶¶ 12, 14.

[78] Opposition to Trustee, Docket No. 216 at 5.

Notwithstanding the fact that this position is simply an unverified argument that is not entitled to evidentiary weight, even if it were true, it does not support the existence of the requisite intent at the time Steven Palladino recorded the Declaration of Homestead.

The fundamental problem with the Palladinos' articulation of Steven Palladino's intent is that it does not suggest the Kittredge Street Property has been their principal residence—"the home where an owner, and the owner's family . . . resides or intends to reside as the *primary dwelling*"—since November 30, 2009.[80] Instead, the most charitable reading of these statements, particularly in light of the undisputed facts outlined above, is that Steven Palladino simply intended to preserve the Kittredge Street Property in case his family ever needed either the dwelling or equity contained therein. Such a vague assertion falls considerably short of demonstrating that "the future occupancy" of the Kittredge Street Property as a principal residence was "in the near future and . . . capable of measurement."[81] Indeed, the Palladinos have not come forward with any evidence demonstrating that they ever took a single step towards moving their principal residence from the Lyall Street Property to the Kittredge Street Property other than out of necessity immediately prepetition. Moreover, given that Gregory Palladino was 24 years old when he moved to the Kittredge Street Property, his occupation does not anchor their claim because he was neither a "minor child" nor a member of the Palladinos' family for purposes of the Massachusetts Homestead Statute.[82]

Alternatively, even assuming, *arguendo*, that Steven Palladino had the requisite intent to occupy the Kittredge Street Property as a principal residence on November 30, 2009, when he

---

[79] *Id.*

[80] Mass. Gen. Laws ch. 188, § 1 (emphasis added).

[81] *In re Roberts*, 280 B.R. at 546.

[82] *Id.*

recorded the Declaration of Homestead, I would nevertheless conclude based on the undisputed facts before me that the "declared homestead exemption" terminated prepetition. Pursuant to Mass. Gen. Laws ch. 188, § 10(a)(3), an estate of homestead may be terminated by

> the abandonment of the home as the principal residence by the owner, the owner's spouse, former spouse or minor children, except that such abandonment shall terminate only the rights of the persons who have abandoned the home . . . .[83]

From November 30, 2009, to August 3, 2014, the Palladino family lived at the Lyall Street Property and considered it the family home.[84] Thus, if the Kittredge Street Property was ever intended to be the Palladinos' principal residence, their testimony and conduct unequivocally demonstrate an abandonment of those plans prior their bankruptcy petition. To be clear, this is not a finding that the Palladinos did not intend to occupy the Kittredge Street Property on the petition date, but a finding that they did not consistently maintain such an intent at all times from the recordation of the Declaration of Homestead to the petition date.

For all these reasons, I find that the Palladinos have not produced "specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue" with respect to a "declared homestead exemption."[85] The undisputed facts establish that Steven Palladino did not intend to occupy the Kittredge Street Property as his principal residence at the time he recorded the Declaration of Homestead. Alternatively, the Palladinos' testimony and conduct demonstrate that their principal residence was the Lyall Street Property between November 30, 2009, and the petition date. Accordingly, the Trustee's and the SEC's objections are, at least in part, well-founded.

---

[83] Mass. Gen. Laws ch. 188, § 10(a)(3).

[84] Undisputed Facts, Docket No. 210-2 at ¶¶ 22-25.

[85] *Morris v. Gov't Dev't Bank of Puerto Rico*, 27 F.3d at 748.

### 2. Validity of the "Automatic Homestead Exemption"

Unlike a "declared homestead exemption," an "automatic homestead exemption," by definition, exists without any public record. Nevertheless, to qualify for an "automatic homestead exemption," an owner and the owner's family members must still "intend to occupy the home as a principal residence."[86] Thus, the requisite intent must exist on the petition date when the exemption is claimed.[87]

In the present case, there is little evidence of the Palladinos' intent on the petition date. Although the Lyall Street Property had been their principal residence, the fact that they also listed the Kittredge Street Property on Schedule C suggests that Lori Palladino was at least considering a move to the Kittredge Street Property prepetition. That said, the Palladinos also claimed the Lyall Street Property as exempt, and only one of those claims can be valid.[88] An alternative explanation for claiming both properties as exempt is that the Palladinos were inappropriately attempting to keep their options open for as long as possible. At the summary judgment phase, it is not my role to pick between two equally plausible explanations. Thus, the Palladinos' intent as of the petition date is a genuine issue of material fact requiring a trial, and summary judgment must be denied as to their claim of an "automatic homestead exemption."

---

[86] Mass. Gen. Laws ch. 188, § 4.

[87] 11 U.S.C. § 522(b)(1).

[88] *See* Mass. Gen. Laws ch. 188, § 1.

19

## V. CONCLUSION

In light of the foregoing, I will enter an order granting both the Trustee's Motion and the SEC's Motion with respect to the Palladinos' claim of a "declared homestead exemption," and denied in part with respect to their claim of an "automatic homestead exemption."

_____
William C. Hillman
United States Bankruptcy Judge

Dated: February 12, 2015

Counsel Appearing:

    Mark G. DeGiacomo, Ashley S. Whyman, Murtha Cullina LLP, Boston, MA,
        for the Trustee
    Christy J. White, Securities and Exchange Commission, Washington, D.C.
        for the SEC
    Eugene C. Johnson, Methuen, MA,
        for the Debtors